**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**WAYCROSS DIVISION**

FILED
Scott L. Poff, Clerk
United States District Court

By staylor at 10:18 am, Jun 24, 2019

OTIS JONES,

               Plaintiff,                      CIVIL ACTION NO.: 5:18-cv-46

     v.

WARDEN HILTON HALL; ASSISTANT
WARDEN RICKY STONE; JUDITH SMITH;
and JAMIA PORTER,

               Defendants.

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff brought this action while incarcerated at Coffee Correctional Facility in Nicholls, Georgia, to challenge certain conditions of his confinement under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), § 42 U.S.C. § 2000cc *et seq.*, and 42 U.S.C. § 1983. Doc. 1. For the reasons stated below, I **FIND** that Plaintiff's free exercise and retaliation claims against Defendant Smith and Defendant Porter are not frivolous and should not be dismissed at this stage. However, I **RECOMMEND** the Court **DISMISS** Plaintiff's requests for compensatory damages, punitive damages, and declaratory relief as to all claims against all remaining Defendants. Plaintiff's remaining relief is limited to court costs and nominal damages. I **RECOMMEND** the Court **DISMISS** Plaintiff's claims against Defendants Hall and Stone. Finally, I **RECOMMEND** the Court **DISMISS** Plaintiff's equal protection, due process, and RLUIPA claims. A copy of Plaintiff's Complaint and attached exhibits, docs. 1, 1-1, and a copy of this Order shall be served upon Defendant Smith and Defendant Porter by the United States Marshal without prepayment of cost.

# BACKGROUND[1]

Plaintiff brings claims against Defendants Hall, Stone, Smith, and Porter.  Doc. 1-1 at 2, 4–6.  Defendant Hall is the warden at Coffee Correctional Facility, and Defendant Stone is the assistant warden.  Id. at 2.  Defendant Smith is the prison chaplain, and Defendant Porter is a facilitator of the Threshold Program, a spiritual program offered at Coffee Correctional Facility.  Id.  Plaintiff brings this action against Defendants Hall, Stone, and Smith in their official and individual capacities but sues Defendant Porter in her individual capacity only.  Id.

At the time of the incidents in question, Plaintiff was assigned to dorm 800-RR.  Inmates assigned to dorm 800-RR can participate in various programs, including the Threshold Program.  Id. at 4.  Defendant Porter acted as the facilitator for the Threshold Program in dorm 800-RR.  Id. at 3–4.  In June 2017, Plaintiff told Defendant Porter that his sincerely held religious beliefs required he limit his involvement with married women and prevented him from participating in religious programs where he would be under the direct spiritual leadership of women.  Id.  Plaintiff asked Defendant Porter to transfer him to dorm 800-QQ because a male facilitator led the Threshold Program in that dorm.[2]  Id.

On July 3, 2017, Plaintiff met with Defendant Porter and Defendant Smith, the prison chaplain.  Id. at 3–5.  According to Plaintiff, Defendant Smith told Plaintiff his religious beliefs were invalid and amounted only to sexism.  Defendant Smith refused to move Plaintiff to dorm 800-QQ and instead threatened to transfer Plaintiff to a different state prison where "Plaintiff would have to worry more about getting 'stabbed or raped.'"  Id. at 4–5.  On July 19, 2017,

---

[1]     During review under 28 U.S.C. § 1915A, "[t]he complaint's factual allegations must be accepted as true."  Waldman v. Conway, 871 F.3d 1283, 1289 (11th Cir. 2017).

[2]     At the time, Mr. Kermit Gentry, who is not named in this action, was the facilitator of the Threshold Program in dorm 800-QQ.  Id.

Defendant Porter informed Plaintiff he would no longer be allowed to participate in the Threshold Program.  Id.  Prison officials then transferred Plaintiff to a dorm that did not offer any religious-based programs.  Id.  Plaintiff discussed the move with Mr. Sizemore, the unit manager at the prison, and Mr. Sizemore told Plaintiff that Defendants Smith and Porter did not want Plaintiff to participate in the Threshold Program due to his sexism.[3]  Id.  Plaintiff alleges that Defendants Hall and Stone, as final policymakers at Coffee Correctional Facility, created or enforced "written and unwritten policies, customs[,] and practices" which "allowed or gave tacit authorization to" subordinates to "retaliate and discriminate" against Plaintiff for "sincerely practicing his religious beliefs."  Id. at 5–6.

Plaintiff alleges Defendants deprived him of the ability to practice his sincerely held religious beliefs in violation of the First Amendment, the due process and equal protection clauses of the Fourteenth Amendment, and RLUIPA.  Id. at 2.  Additionally, Plaintiff alleges Defendants retaliated against him for asserting his religious rights.  Id.  As relief, Plaintiff requests $15,000 in compensatory damages, $30,000 in punitive damages, court costs and fees, a declaratory judgment, and all other relief the Court deems just, proper, and equitable.  Id. at 8.

## STANDARD OF REVIEW

Plaintiff is bringing this action *in forma pauperis*.  Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets, shows an inability to pay the filing fee, and also includes a statement of the nature of the action which shows that he is entitled to redress.  Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous, malicious, or if it fails to state a claim upon which relief may be granted.  28 U.S.C.

---

[3]     Mr. Sizemore is not a named party to this action.

§§ 1915(e)(2)(B)(i)–(ii).  Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity.  Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous, malicious, fails to state a claim upon which relief may be granted, or which seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).

The Court looks to the instructions for pleadings contained in the Federal Rules of Civil Procedure when reviewing a complaint on an application to proceed *in forma pauperis*.  See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances).  Further, a claim is frivolous under § 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'"  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010).  Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice.  Twombly, 550 U.S. at 555.  Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose

factual contentions are clearly baseless." <u>Bilal</u>, 251 F.3d at 1349 (quoting <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972); <u>Boxer X v. Harris</u>, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys . . . ." (emphasis omitted) (quoting <u>Hughes v. Lott</u>, 350 F.3d 1157, 1160 (11th Cir. 2003))). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. <u>McNeil v. United States</u>, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

### DISCUSSION

Plaintiff brings claims under RLUIPA, § 42 U.S.C. § 2000cc *et seq*., and 42 U.S.C § 1983. These two statutes create distinct causes of action which sometimes differ in terms of the available relief. Thus, the Court will first analyze Plaintiff's claims and relief under § 1983 before turning to Plaintiff's RLUIPA claim.

### I.      Plaintiff's § 1983 Claims

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988). Notably, § 1983 "is merely a vehicle by which to bring these suits; it does not create any substantive federal rights." <u>Harris v. City of Hoover</u>, No. CV 06-B-4613-S, 2008 WL 11424240, at *3 (N.D. Ala. Sept. 30, 2008). Thus, in order to bring a § 1983 claim, plaintiffs "must point to

a specific federal right that the defendant violated." Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1299 (11th Cir. 2007).

Here, the Court finds Plaintiff asserts four § 1983 claims against Defendants. First, Plaintiff alleges Defendants violated the Free Exercise Clause of the First Amendment. Doc. 1-1 at 1. Second, Plaintiff claims Defendants retaliated against him in violation of the First Amendment. Id. Third, Plaintiff avers Defendants violated the Fourteenth Amendment's Equal Protection Clause. Id. Fourth, Plaintiff argues Defendants violated the Due Process Clause of the Fourteenth Amendment. Id.

### A. Plaintiff's § 1983 Claims: Available Defendants

Plaintiff attempts to hold Defendant Hall and Defendant Stone liable for the actions of Defendants Porter and Smith based solely on Defendants Hall and Stone's supervisory positions. In § 1983 actions, however, liability must be based on something more than a defendant's supervisory position or a theory of respondeat superior. Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 801 (11th Cir. 1998). A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations. Brady, 133 F.2d at 802. Rather, in the Eleventh Circuit:

> [t]o state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct.

Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011) (citing West v. Tillman, 496 F.3d 1321, 1328 (11th Cir. 2007)).

While Plaintiff implies Defendants Hall and Stone are liable based on their positions and control as warden and assistant warden at Coffee Correctional Facility, Plaintiff does not allege Defendant Hall or Defendant Stone had any personal involvement with the alleged violations of Plaintiff's rights.  Doc. 1-1 at 4–5.  Additionally, Plaintiff fails to plead any facts that suggest a history of widespread abuse or that support an inference that Defendants Hall or Stone directed or knowingly failed to prevent the acts of which Plaintiff complains.  Finally, though Plaintiff suggests that Defendants Hall and Stone either allowed or tacitly authorized the conduct of Defendants Smith and Porter via "written and unwritten policies, customs, and . . . practices," doc. 1-1 at 4–5, he alleges no facts in support of this conclusory assertion.  Accordingly, Plaintiff may not hold Defendants Hall or Stone liable for any rights violations allegedly committed by the other two Defendants.  Therefore, I **RECOMMEND** that the Court **DISMISS** Plaintiff's § 1983 claims against Defendant Hall and Defendant Stone.

### B.      Plaintiff's § 1983 Claims: Available Relief

As relief, Plaintiff requests compensatory and punitive damages, court costs and fees, a declaratory judgment, and all other relief the Court deems equitable.  Doc. 1-1 at 8.  For the reasons below, I **RECOMMEND** the Court **DISMISS** Plaintiff's requests for compensatory damages, punitive damages, and a declaratory judgment.  Plaintiff's requests for nominal damages and court costs shall proceed as to all surviving § 1983 claims.

### 1.      Equitable Relief

"The general rule in [the Eleventh] [C]ircuit is that a transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief."  Smith v. Allen, 502 F.3d 1255, 1267 (2007) (citing McKinnon v. Talladega County, 745 F.2d 1360, 1363 (11th Cir. 1984)); see also Owens v. Sec'y, Fla. Dep't of Corr., 602 F. App'x 475, 476–77 (11th

Cir. 2015); Cotterall v. Paul, 755 F.2d 777, 780 (11th Cir. 1985) (finding the mere possibility

that plaintiff "might again be transferred" to the same institution is "too speculative" to avoid

mootness).

Plaintiff brought this action while incarcerated at Coffee Correctional Facility in

Nicholls, Georgia.  Doc. 1 at 3.  On June 13, 2018, Plaintiff filed a notice of change of address

informing the Court that he is no longer incarcerated at Coffee Correctional Facility and is now

at the Albany Transitional Center.  Doc. 4 at 1.  Thus, his request for a declaratory judgment is

moot as of his transfer.  Accordingly, I **RECOMMEND** the Court **DISMISS** Plaintiff's request

for declaratory relief.

### 2.    *Compensatory and Punitive Damages*

"Section 1997e(e) of the [Prisoner Litigation Reform Act ("PLRA")] bars prisoner civil

actions for 'mental or emotional injury suffered while in custody without a prior showing of

physical injury.'" Young v. Smith, No. 6:17-cv-131, 2018 WL 3447179, at *14 (S.D. Ga. July

17, 2018); see also 42 U.S.C. § 1997e(e); Al-Amin v. Smith, 637 F.3d 1192, 1197 n.5, 1199 &

n.9 (11th Cir. 2011) (finding that § 1997(e) bars monetary damages for all constitutional claims

in absence of a physical injury); Williams v. Brown, 347 F. App'x 429, 436 (11th Cir. 2009)

("[C]ompensatory damages under § 1983 may be awarded only based on actual injuries caused

by the defendant and cannot be presumed or based on the abstract value of the constitutional

rights that the defendant violated." (emphasis omitted)).

However, "[w]hile § 1997e(e) precludes a prisoner from seeking compensatory or

punitive damages without a prior showing of physical injury, it does not preclude a prisoner from

seeking nominal damages." Hale v. Sec'y for Dep't of Corr., 345 F. App'x 489, 492 (11th Cir.

2009) (finding the trial court erred in not liberally construing a pro se prisoner's complaint to

determine whether the plaintiff sought nominal damages); see Brooks v. Warden, 800 F.3d 1295, 1307 (11th Cir. 2015); Oliver v. Falla, 258 F.3d 1277, 1282 (11th Cir. 2001). "Nominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages." Hughes, 350 F.3d at 1162 (remanding for a determination as to whether plaintiff-inmate was entitled to nominal damages); see also Jackson v. Hill, 569 F. App'x 697, 699 (11th Cir. 2014) ("[T]he district court should have considered whether Jackson could recover nominal damages despite his failure to request that relief[.]").

Here, Plaintiff does not allege Defendants' conduct resulted in a physical injury. Thus, he cannot sustain a request for compensatory or punitive damages. However, in his Complaint, Plaintiff also requested a declaratory judgment, recovery of costs, and "all other relief" the Court "deems just, proper and equitable." Doc. 1-1 at 8. Construed liberally, this amounts to a request for nominal damages. Boxer X v. Donald, 169 F. App'x 555, 558–59 (11th Cir. 2006) (finding that plaintiff-prisoner "did seek nominal damages when his complaint requested compensatory damages and 'any other relief the court deem[s] appropriate'"). Thus, I **RECOMMEND** the Court **DISMISS** Plaintiff's requests for compensatory and punitive damages pursuant to § 1997e(e).

### C.      Plaintiff's Free Exercise Claim

The Free Exercise Clause of the First Amendment "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." Cutter v. Wilkinson, 544 U.S. 709, 719 (2005). "To establish a violation of his right to free exercise," a plaintiff "must first establish that a state actor imposed a 'substantial burden' on his practice of religion." Wilkinson v. GEO Grp., Inc., 617 F. App'x 915, 917 (11th Cir. 2015) (citing Church

of Scientology Flag Serv. Org., Inc. v. City of Clearwater, 2 F.3d 1514, 1549 (11th Cir. 1993)).

To prove that his religious exercise was substantially burdened, a plaintiff "must present

evidence that he was coerced to perform conduct that his religion forbids or prevented from

performing conduct that his religion requires." Id.  The defendants can then support their

conduct on the ground that they applied a "neutral law of general applicability[.]"  Emp't Div.,

Dep't of Human Res. of Or. v. Smith, 494 U.S. 872, 879 (1990).

Prisoners retain their First Amendment rights, including rights under the free exercise of

religion clause.  However, "lawful incarceration brings about the necessary withdrawal or

limitation of many privileges and rights, a retraction justified by the considerations underlying

our penal system." Brunskill v. Boyd, 141 F. App'x 771, 774 (11th Cir. 2005) (quoting O'Lone

v. Estate of Shabazz, 482 U.S. 342, 348 (1987)).  "In the prison context, the state actor can

defend the action if it is 'reasonably related to legitimate penological interests.'"  Wilkinson, 617

F. App'x at 917 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).  To successfully plead a free

exercise violation in a prison setting, "a plaintiff must show that prison officials administered or

implemented a policy or regulation, not reasonably related to any legitimate penological interest

or security measure, which substantially burdens and significantly interferes with the practice of

his religion or restricts his free exercise of a sincerely held religious belief."  Hosey-Bey v.

Williams, No. 2:12-CV-959, 2015 WL 4988388, at *6 (M.D. Ala. Aug. 19, 2015).

Plaintiff's allegation that Defendants Smith and Porter refused to change his dormitory

assignment so that he could participate in a religious program led by a male states a non-

frivolous free exercise claim.  Plaintiff alleges Defendants Smith and Porter refused his request

because they doubted the veracity of his religious belief and believed his request originated from

sexism.  This is enough to show, at this stage of review, that Defendants lacked a legitimate

penological interest for refusing Plaintiff's request.  Accordingly, Plaintiff's free exercise claim against Defendants Smith and Porter shall proceed.

### D.       Plaintiff's Retaliation Claim

"It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement."  O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011).  It is also established that an inmate may maintain a cause of action against prison administrators who retaliate against him for making such complaints.  Id. (quoting Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008) (citation omitted)).  "To establish a First Amendment retaliation claim, a prisoner need not allege the violation of an additional separate and distinct constitutional right; instead, the core of the claim is that the prisoner is being retaliated against for exercising his right to free speech."  Id.  "To prevail, the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech."  Mosley, 532 F.3d at 1276 (citing Bennett v. Hendrix, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)).

Here, Plaintiff's request to exercise his religious beliefs in a program with a male facilitator is constitutionally protected speech.  Additionally, Plaintiff arguably asserts that a prisoner of "ordinary firmness" may have been deterred from exercising his First Amendment rights based on the alleged actions of Defendants Smith and Porter.  Bennett v. Hendrix, 423 F.3d 1247, 1252 (11th Cir. 2005) (observing that the "adverse effect" depends on the context of the alleged action and focuses on "the status of the speaker, the status of the retaliator, the

11

relationship between the speaker and the retaliator, and the nature of the retaliatory acts" (citing Thaddeus-X v. Blatter, 175 F.3d 378, 398 (6th Cir. 1999))).  Plaintiff alleges he was moved to a dorm without additional programming, religious or otherwise, in response for requesting religious accommodations and that he was threatened with transfer to a more violent institution. Doc. 1-1 at 4–5.  Thus, Plaintiff has stated facts to support non-frivolous First Amendment retaliation claims against Defendants Smith and Porter, and those claims remain pending.

> E.     Plaintiff's Equal Protection Claim

Plaintiff alleges Defendants Smith and Porter violated the Equal Protection Clause of the Fourteenth Amendment.  To state a valid equal protection claim, a prisoner must show: (1) he has been treated differently from other "similarly situated" inmates; and (2) this discriminatory treatment is based upon a constitutionally impermissible basis, such as religion.  Jones v. Ray, 279 F.3d 944, 946–47 (11th Cir. 2001).  Additionally, a prisoner must demonstrate the defendants were motivated by a discriminatory intent or purpose.  Muhammad v. Sapp, 388 F. App'x 892, 899 (11th Cir. 2010) (dismissing an equal protection claim when the plaintiff-inmate claimed that the prison "provided kosher meals to Jewish inmates but did not provide halal meals to Muslim inmates" because the plaintiff still failed that "the prison's decision . . . was the product of intentional discrimination"); Parks v. City of Warner Robins, 43 F.3d 609, 616 (11th Cir. 1995) (requiring "proof of discriminatory intent or purpose" to show an Equal Protection Clause violation); Elston v. Talladega Cty. Bd. of Educ., 997 F.2d 1394, 1406 (11th Cir. 1993) (requiring a plaintiff to demonstrate that the challenged action was motivated by an intent to discriminate in order to establish an equal protection violation).  Potential indicators of discriminatory intent include: "a clear pattern of disparate impact, unexplainable on grounds other than [religion]; the historical background of the challenged decision or the specific events

leading up to the decision; procedural or substantive departures from the norm; and the legislative or administrative history of the challenged statute." Parks, 43 F.3d at 617 (citation omitted).

Here, Plaintiff has not stated sufficient facts to show that he received different treatment than other, similarly situated inmates, nor does he establish a plausible claim that Defendants Smith and Porter intentionally discriminated against him because of his religion.  First, while Plaintiff alleges Defendants refused to transfer him to a dorm with a Threshold Program led by a male facilitator, he does not allege Defendants accommodated internal transfer requests for other inmates based on different religious beliefs.  Cf. Jones v. St. Lawrence, No. 4:10-cv-066, 2010 WL 2772440, at *2 (S.D. Ga. July 13, 2010) ("[Plaintiff] alleges that Muslims have been treated differently from Christian and Jewish inmates . . . . That is all that is required to survive § 1915A screening here.").  Thus, Plaintiff fails to show Defendants treated him differently than another similarly situated group or individual.  Equally dispositive is Plaintiff's failure to allege that Defendants intended to discriminate against him due to his religion.  Rather, Plaintiff states Defendants did not believe his request was religious in nature.  Doc. 1-1 at 4–5.  Accordingly, Plaintiff fails to allege facts sufficient to show disparate treatment on the basis of his religion.  I, therefore, **RECOMMEND** the Court **DISMISS** Plaintiff's equal protection claim.

### F.      Plaintiff's Due Process Claim

Finally, Plaintiff alleges Defendants violated the Due Process Clause of the Fourteenth Amendment.  Doc. 1-1 at 1.  This claim may implicate either the procedural or substantive protections of the Due Process Clause.

1.    *Procedural Due Process*

A § 1983 action alleging a procedural due process violation requires proof of three elements: "deprivation of a constitutionally-protected liberty or property interest; state action; and constitutionally-inadequate process." Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994). The Eleventh Circuit Court of Appeals has identified two situations in which a prisoner—already deprived of liberty in the traditional sense—can be further deprived of liberty such that procedural due process protections are required: (1) when there is a "change in the prisoner's conditions of confinement so severe that it essentially exceeds the sentence imposed by the court[]"; and (2) when the State has consistently given a benefit to prisoners, usually through a statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Kirby v. Siegelman, 195 F.3d 1285, 1291 (11th Cir. 1999) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

Here, the only facts supporting a procedural due process claim concern Plaintiff's transfer from a dorm with programming to a general housing unit without special programs. Except for the presence or absence of programming, Plaintiff does not allege any atypical or significant hardship imposed by the move. This is not enough to create a liberty interest under either of these two prongs. See Wallace v. Hamrick, 229 F. App'x 827 (11th Cir. 2007) (finding a liberty interest where plaintiff was in administrative segregation for 28 days with no hot water, no ventilation, and no opportunity for exercise while awaiting a hearing on his disciplinary violations); Turner v. Warden, 650 F. App'x 695 (11th Cir. 2016) (determining no liberty interest existed when plaintiff was allowed personal property, was not denied human contact, and received regular meals, five hours of weekly outdoor recreation, three weekly showers, and

weekend visitation, as these conditions were similar to those in general population); Smith v. Reg'l Dir. of Fla. Dep't of Corr., 368 F. App'x 9 (11th Cir. 2010) (finding no liberty interest existed where segregated inmate failed to show that segregation caused a major disruption to his environment compared to general population).  Plaintiff, therefore, fails to allege a colorable procedural due process claim.

### 2.    *Substantive Due Process*

"A violation of substantive due process occurs when an individual's fundamental rights are infringed, regardless of the fairness of the procedure.  Waldman v. Conway, 871 F.3d 1283, 1292 (11th Cir. 2017) (citing McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc)). Even where a fundamental liberty interest does not exist, "substantive due process nonetheless protects against the arbitrary and oppressive exercise of government power."  Id.  Unlike procedural due process, substantive due process "provides heightened protection against government interference with certain fundamental rights[.]"  Washington v. Glucksberg, 521 U.S. 702, 718–19 (1997) (internal citations omitted).  If Plaintiff has a fundamental right, then the government may not infringe on that right unless it proves that the limitation is "narrowly tailored to serve a compelling state interest."  Reno v. Flores, 507 U.S. 292, 302 (1993). However, substantive due process claims do not encompass other "fundamental" rights which are already explicitly protected by another Amendment.  Albright v. Oliver, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular government behavior, that Amendment, not the more generalized notion of substantive due process must be the guide for analyzing these claims." (citation and internal quotation marks omitted)).

Plaintiff does not allege an independent basis for a substantive due process claim outside of Defendants' alleged religious freedom violations.  Because religious freedom is explicitly protected in the First Amendment, claims alleging a violation of this right must be brought under the applicable clause in the First Amendment, not the Fourteenth Amendment's Due Process Clause.  Young, 2018 WL 3447179, at *13 n.10 (denying a substantive due process claim based on a violation of religious freedom because such violations "do not implicate substantive due process and cannot form the basis of a Fourteenth Amendment claim" (citing Albright, 510 U.S. at 273)).  Thus, I **RECOMMEND** the Court **DISMISS** Plaintiff's due process claims.

## II.    Plaintiff's RLUIPA Claim

RLUIPA creates "an express private cause of action" when prison officials place "restrictions on the religious exercise of institutionalized persons."[4]  Sossamon v. Texas, 563 U.S. 277, 282 (2011); Haight v. Thompson, 763 F.3d 554, 558 (6th Cir. 2014) (RLUIPA "created a private cause of action that empowers inmates to obtain 'appropriate relief' from those who violate the statute" (quoting § 2000cc-2(a))).  RLUIPA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief[.]"  42 U.S.C. § 2000cc-5(7)(A).  Under RLUIPA, prisons cannot substantially burden a prisoner's religious exercise, even if the burden results from a rule of general applicability, unless "the government demonstrates that the burden 'is in furtherance of a compelling governmental interest' and 'is the least restrictive means of furthering' that interest.  Sossamon, 563 U.S. at 281 (quoting § 2000cc-1(a)); Benning v. Georgia, 391 F.3d 1299, 1306 (11th Cir. 2004).  When a prison policy or

---

[4]        Congress passed RLUIPA after the Supreme Court found RFRA unconstitutional as applied to the states in City of Boerne v. Flores, 521 U.S. 507 (1997).  Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682, 695–96 (2014).  Because RLUIPA "imposes the same general test as RFRA but on a more limited category of governmental actions," RFRA case law is relevant in determining a RLUIPA claim. Id. at 695, 730 (referring to RLUIPA and RFRA as "sister statutes").

practice substantially burdens an inmate's religious practice, RLUIPA requires the prison to demonstrate the policy or practice "serves a compelling interest, such as prison safety, and the challenged rule is the least restrictive means of serving that interest." Benning, 391 F.3d at 1312. The RLUIPA plaintiff bears "the initial burden of proving" a policy or action "implicates his religious exercise" and that the challenged policy or practice "substantially burdens" that exercise of religion. Holt v. Hobbs, 135 S. Ct. 853, 862 (2015).

Here, Plaintiff alleges that he sincerely believes his religion prohibits him from participating in any spiritual program with a female leader. He also alleges that he requested a transfer to a different program with a male facilitator, but his request was denied. These allegations may be enough to allege a factual basis for a non-frivolous RLUIPA claim, but, as explained below, Plaintiff cannot pursue money damages or equitable relief at this point, so his claim fails as a matter of law.

Individuals "may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2. Though the phrase "appropriate relief" seems broad at first glance, binding decisions from the Supreme Court of the United States and the Eleventh Circuit have, in combination, established certain limitations on the relief available to incarcerated individuals bringing RLUIPA claims. See Sossamon, 563 U.S. at 277; Al-Amin, 637 F.3d at 1192; Allen, 502 F.3d at 1255.

Plaintiffs cannot sustain a RLUIPA action for money damages against official or individual capacity defendants. Sossamon, 563 U.S. at 277; Allen, 502 F.3d at 1255; see also Davila v. Marshall, 649 F. App'x 977, 980 (11th Cir. 2016) ("RLUIPA does not authorize claims for monetary damages against prison officials in their individual capacities."); Davila v. Gladden, 777 F.3d 1198, 1210 (11th Cir. 2015) ("RFRA does not therefore authorize suits for

money damages against officers in their official capacities."); James v. Taylor, No. 5:15-cv-266, 2016 WL 1696211, at *2 (M.D. Ga. Mar. 22, 2016) ("Binding Supreme Court and Eleventh Circuit case law prevents Plaintiff from obtaining monetary damages under RLUIPA."). Consequently, prisoners may only bring RLUIPA claims for equitable relief.  San Antonio v. Henry, 618 F. App'x 554, 557 (11th Cir. 2015) (observing that the "only relief" the prisoner-plaintiff "may obtain for a RLUIPA violation is declaratory and injunctive relief"); Gardner v. Riska, 444 F. App'x 353, 355–56 (11th Cir. 2011) ("RLUIPA creates an express private cause of action for injunctive and declaratory relief against the government . . . .").

As discussed above, an inmate's claim for declaratory or injunctive relief regarding a condition of confinement is "subject to dismissal for mootness when that inmate is transferred to another prison and is no longer subject to the condition" for which the declaratory or injunctive relief is sought.  Govereh v. Johns, No. 5:17-cv-62, 2017 WL 4819385, at *2 n.1 (S.D. Ga. Oct. 25, 2017); see McKinnon v. Talladega County, 745 F.2d 1360, 1363 (11th Cir. 1984).  "The injunctive and declaratory relief analysis is the same for both Plaintiff's RLUIPA and his Section 1983 causes of action."  James, 2016 WL 1696211, at *2.  "In both cases, '[t]he general rule in [this] circuit is that a transfer . . . from prison will moot that prisoner's claims for injunctive and declaratory relief.'"  Id. (quoting Allen, 502 F.3d at 1267); see also Marshall, 649 F. App'x at 980–81; San Antonio, 618 F. App'x at 557; Hathcock v. Cohen, 287 F. App'x 793 (11th Cir. 2008).

Because Plaintiff is no longer incarcerated at Coffee Correctional Facility, his request for a declaratory judgment is moot.  Thus, even if Plaintiff had alleged a factual basis for a RLUIPA claim, he is not entitled to any relief under RLUIPA.  As a result, Plaintiff's purported RLUIPA claim does not present a case or controversy over which the Court has jurisdiction.  See Owens,

602 F. App'x at 476–77; Antonio v. Henry, No. 3:13-cv-528, 2015 WL 9918689, at *2–3 (N.D. Fla. Dec. 18, 2015).  Accordingly, I **RECOMMEND** the Court **DISMISS** Plaintiff's RLUIPA claim.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** the Court **DISMISS** Plaintiff's claims against Defendant Hall and Defendant Stone, **DISMISS** Plaintiff's RLUIPA claim and his § 1983 equal protection and due process claims, and **DISMISS** Plaintiff's requests for compensatory damages, punitive damages, and declaratory relief as to all surviving claims. However, I **FIND** that Plaintiff's retaliation and free exercise claims against Defendants Smith and Porter may proceed.  A copy of Plaintiff's Complaint and attached exhibits, docs. 1, 1-1, and a copy of this Order shall be served upon Defendants Smith and Porter by the United States Marshal without prepayment of cost.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not

meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**The Court also provides the following instructions to the parties that will apply to the remainder of this action and which the Court urges the parties to read and follow.**

## INSTRUCTIONS TO DEFENDANTS

Because Plaintiff is proceeding *in forma pauperis*, the undersigned directs that service be effected by the United States Marshal.  Fed. R. Civ. P. 4(c)(3).  In most cases, the marshal will first mail a copy of the complaint to defendants by first-class mail and request that defendants waive formal service of summons.  Fed. R. Civ. P. 4(d); Local R. 4.7.  Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and any such defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver.  Fed. R. Civ. P. 4(d)(2).  Generally, a defendant who timely returns the waiver is not required to answer the complaint until 60 days after the date that the marshal sent the request for waiver.  Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that Defendants are hereby granted leave of court to take the deposition of Plaintiff upon oral examination.  Fed. R. Civ. P. 30(a)(2).  Defendants are further advised that the Court's standard 140-day discovery period will commence upon the filing of the last answer.  Local R. 26.1.  Defendants shall ensure that all discovery, including Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

In the event that Defendants take the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30.  As Plaintiff will likely not be in attendance for such a deposition, Defendants shall notify Plaintiff of the deposition and advise him that he may serve on Defendants, in a sealed envelope, within 10 days of the notice of deposition, written questions Plaintiff wishes to propound to the witness, if any. Defendants shall present such questions to the witness seriatim during the deposition.  Fed. R. Civ. P. 30(c).

## INSTRUCTIONS TO PLAINTIFF

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon their attorney, a copy of every further pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to Defendants or their counsel.  Fed. R. Civ. P. 5.  "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number."  Fed. R. Civ. P. 10(a).

Plaintiff is charged with the responsibility of **immediately** informing this Court and defense counsel of any change of address during the pendency of this action.  Local R. 11.1. Plaintiff's failure to notify the Court of a change in his address may result in dismissal of this case.

Plaintiff has the responsibility for pursuing this case.  For example, if Plaintiff wishes to obtain facts and information about the case from Defendants, Plaintiff must initiate discovery. See generally Fed. R. Civ. P. 26 *et seq*.  The discovery period in this case will expire 140 days after the filing of the last answer.  Local R. 26.1.  Plaintiff does not need the permission of the

21

Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period.  Id.  Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial.  Local R. 26.4.

Interrogatories are a practical method of discovery for incarcerated persons.  See Fed. R. Civ. P. 33.  Interrogatories may be served only on a party to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are not named as a defendant.  Interrogatories are not to contain more than 25 questions. Fed. R. Civ. P. 33(a).  If Plaintiff wishes to propound more than 25 interrogatories to a party, Plaintiff must have permission of the Court.  If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorney for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery.  Fed. R. Civ. P. 26(c), 37(a)(2)(A); Local R. 26.7.

Plaintiff has the responsibility for maintaining his own records of the case.  If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page.  **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for want of prosecution.  Fed. R. Civ. P. 41; Local R. 41.1.

It is Plaintiff's duty to cooperate fully in any discovery which Defendants may initiate. Upon no less than five days' notice of the scheduled deposition date, Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, <u>including dismissal of this case</u>.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is <u>required</u> to prepare and file his own version of the Proposed Pretrial Order. A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

### <u>ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT</u>

Defendants may choose to ask the Court to dismiss this action by filing a motion to dismiss, a motion for summary judgment, or both. Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within 14 days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Local R. 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendants' motion. Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within 21 days after service of the motion. Local R. 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact set forth in

Defendants' statement of material facts will be deemed admitted unless specifically controverted by an opposition statement.  Should Defendants file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any material fact in this case.  That burden cannot be carried by reliance on the conclusory allegations contained within the complaint.  Should Defendants' motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest Defendants' statement of the facts.  Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in Defendants' affidavits will be accepted as true and summary judgment may be entered against Plaintiff pursuant to Federal Rule of Civil Procedure 56.

   **SO ORDERED** and **REPORTED and RECOMMENDED**, this 24th day of June, 2019.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA